Eastern District of Kentucky
FILED

FEB 1 6 2006

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

CIVIL ACTION NO. 05-402-JMH

WILLIAM KAPP             PLAINTIFF

VS.        **MEMORANDUM OPINION AND ORDER**

JOE BOOKER, WARDEN             DEFENDANT

**INTRODUCTION**

Plaintiff William Kapp ("Kapp") is an inmate confined in the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"). Proceeding *pro se*, he filed a petition [Record No. 1] which the Court construed as a civil rights action under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) [Record No. 2]. The Court screens civil rights complaints pursuant to 28 U.S.C. §1915A. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).

This is a *pro se* complaint and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

1

Plaintiff has named Joe Booker, warden at FMC-Lexington, as the defendant in this proceeding. In his complaint, Kapp asserts that the defendant has violated his rights under the Eighth Amendment to the Constitution of the United States by exhibiting deliberate indifference to his serious medical needs. The plaintiff seeks compensatory damages and injunctive relief.

## BACKGROUND

On April 3, 2003, Kapp was convicted by a jury under 16 U.S.C. §1538(a)(1) of conspiracy to take and kill endangered species; under 16 U.S.C. §1540(b)(1) of receiving, acquiring, purchasing, transporting and selling wildlife in violation of 16 U.S.C. §3372(a)(1) and 16 U.S.C. §3373(d)(1)(B); and under 18 U.S.C. §371, 372 of conspiracy to defraud the United States. Kapp was sentenced to a term of fifty-one months of incarceration, each count to be served concurrently with one another. *United States v. Kapp*, 02-CR-418, Northern District of Illinois [Record Nos. 118, 174]. As of this date, Kapp's appeal of this conviction remains before the Seventh Circuit. On February 18, 2004, Kapp was also convicted by a jury under 26 U.S.C. §5861 of receiving an unregistered firearm and under 26 U.S.C. §5861 of receiving a firearm without a serial number. Kapp was sentenced to two terms of thirty-seven months of incarceration to be served concurrently with each other and with the sentence imposed in 02-CR-418. *United States v. Kapp*, 02-CR-420, Northern District of Illinois [Record Nos. 36, 43].

In his complaint, Kapp alleges that he suffers from "Reflex Sympathetic Dystrophy" ("RSD"), a medical condition that affects the autonomic nervous system. The information provided with Kapp's complaint indicates that when RSD acts throughout the body, and not merely locally, it is referred to as "Complex Regional Pain Syndrome" ("CRPS"). Kapp has included information about the disease and its acceptance in the general medical community. Kapp alleges that his

2

treating physician, Dr. Timothy Lubenow, is considered an expert on the condition and served as a member of the Scientific Advisory Board that worked with the Social Security Administration to establish standards to diagnose and treat RSD/CRPS. Kapp asserts that his current medical care is so deficient that it may lead, as it does in some CRPS patients, to pneumonia, acute respiratory failure, or sudden cardiopulmonary arrest.

Kapp has included as exhibits to his complaint a January 20, 2004 letter from Dr. Dershi Saxena detailing the results of his medical examination of the plaintiff. In his letter, Dr. Saxena stated that Kapp suffers from CRPS in the feet, and that CRPS can spread to other parts of the body if not treated quickly. There is also a letter dated March 10, 2004, from Dr. Lubenow, a physician at Rush University Medical Center in Chicago, regarding Kapp's medical condition, which appears to be based on a physical examination of the plaintiff. Dr. Lubenow recommends treatment through specific medications, aggressive physical therapy twice a day, a surgically-implanted spinal cord stimulator, and separate stimulators for Kapp's upper and lower extremities if necessary.

Kapp alleges that his medications were confiscated upon his arrival at FMC-Lexington on July 3, 2004. When the medical staff at FMC-Lexington refused to continue Kapp's regimen on medications as they had existed prior to his incarceration, Kapp invoked the Bureau of Prisons' ("BOP") administrative grievance process. Kapp filed a BP-9 on July 14, 2004, which was denied on July 27, 2004. Kapp appealed that determination by filing his BP-10 on August 12, 2004, which was in turn denied on September 4, 2004. On September 30, 2004, Kapp filed his final appeal by filing his BP-11, in which he requested one million dollars in damages. Kapp's appeal was denied by the Administrator of National Inmate Appeals on November 9, 2004.

3

In addition to Kapp's invocation of the formal grievance process, his spouse, Sarah L. Blaskey Kapp ("Ms. Kapp"), a registered nurse, wrote directly to the warden at FMC-Lexington on July 20, 2004, on her husband's behalf. The warden responded extensively on July 27, 2004, explaining in detail the facility's diagnosis and treatment of her husband. In addition to this correspondence, Kapp has submitted a number of letters between Ms. Kapp, the warden at FMC-Lexington, and outside physicians treating the plaintiff at FMC-Lexington, which discuss at length Kapp's condition and treatment at the prison facility, Ms. Kapp's concerns regarding the sufficiency of the same, and their responses thereto.

Kapp filed the instant complaint on October 3, 2005, in which he demands that he be provided with medical treatment as prescribed by his outside physicians, as well as one million dollars in damages for pain and suffering inflicted in violation of Kapp's rights under the Eighth Amendment's prohibition against cruel and unusual punishment. For the reasons set forth below, the claims in Kapp's complaint fail as a matter of law and must be dismissed.

## DISCUSSION

**1.     Standing to Sue; Unauthorized Practice of Law**

As a preliminary matter, the Court notes that Kapp's complaint has been filed and the filing fee paid, not by Kapp, but by Ms. Kapp. Ms. Kapp has included with the complaint a "Statutory Short Form Power of Attorney for Property Law" (the "Kapp POA") of the kind specifically authorized by the Illinois Compiled Statutes. 45 I.L.C.S. 45/3-3. The Kapp POA was executed on July 2, 2004, in Cook County, Illinois, contains the signatures of Kapp as principal and Ms. Kapp as agent, and appears to be properly notarized.

4

As indicated in Subsection (j) relating to claims and litigation, such a power of attorney authorizes the agent to:

> "institute, prosecute, defend, abandon, compromise, arbitrate, settle and dispose of any claim in favor of or against the principal or any property interests of the principal; collect and receipt for any claim or settlement proceeds and waive or release all rights of the principal; employ attorneys and others and enter into contingency agreements and other contracts as necessary in connection with litigation; and, in general, exercise all powers with respect to claims and litigation which the principal could if present and under no disability."

45 I.L.C.S. 45/3-4(j). Having reviewed the Kapp POA, the enabling statute, and the case law construing it, the Court is satisfied that, under Illinois law, the Kapp POA was properly executed and authorizes Ms. Kapp to institute the present suit as agent on behalf of Kapp. Nonetheless, the Court has some concerns that because Ms. Kapp did not retain counsel to represent her as agent for her husband, the filing of the complaint and the presentment of the arguments contained therein may constitute the unauthorized practice of law. While an individual may represent themselves *pro se*, that is, without the benefit of counsel, all states have laws prohibiting a person who is not a lawyer from representing another person in a legal proceeding. While the power of attorney gives Ms. Kapp legal standing to assert claims owned by her husband on his behalf, it does not authorize her to practice law by representing another person, her husband, in a lawsuit: that must still be done by a licensed attorney. The Court will not concern itself further on this point in light of its ultimate resolution of the claims in the instant case, but cautions Ms. Kapp that she may have run afoul of that prohibition, even if inadvertently.

2. **Statute of Limitations**

The Court has further satisfied itself that Kapp's claims are timely raised. Federal courts sitting in Kentucky "borrow" Kentucky's one-year statute of limitations for personal injury claims,

5

KRS 413.140(1), for constitutional claims asserted under 42 U.S.C. §1983. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990). The same one-year statute of limitations is borrowed for civil rights claims asserted against federal officers pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) (citing *McSurely v. Hutchison*, 823 F.2d 1002 (6th Cir. 1987)).

Under federal law, a claim accrues when the plaintiff knows, or has reason to know, of the injury which forms the basis for the action. *Bagley v. C.M.C. Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir.1991); *Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir.1986). Kapp's claims therefore accrued, and hence commenced the statute of limitations period running, after July 3, 2004, when he was delivered to FMC-Lexington, his prescription drugs were confiscated, and he discovered that the medical staff would not allow him to receive those same medications, but before July 14, 2004, when he filed an administrative grievance regarding those actions. The statute of limitations on Kapp's claims would therefore ordinarily expire no later than July 14, 2005, one year after his claims accrued. *See, e.g., Hill v. Godinez*, 955 F.Supp. 945, 951-52 (N.D.Ill. 1997) (inmate's §1983 claim for deliberate indifference to serious medical needs accrued upon inmate's discovery of information suggesting harm due to allegedly inadequate diagnosis and treatment).

However, federal law unambiguously requires a prisoner to exhaust all available administrative remedies as prerequisite to filing a lawsuit with respect to prison conditions.

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a) (1999). Because prisoners cannot bring suit in federal court until they have exhausted their administrative remedies, the running of the applicable statute of limitations is tolled

6

for the period during which a prisoner is exhausting "such administrative remedies as are available." *Brown v. Morgan,* 209 F.3d 595, 596 (6th Cir. 2000). Here, Kapp invoked the BOP's administrative remedy process almost immediately and did not receive a final denial until November 9, 2004. Kapp filed the instant complaint on October 3, 2005, less than one year after he exhausted his administrative remedies, and hence within the statute of limitations. Given the stridency of Kapp's objections to having his prescription regimen altered by FMC-Lexington medical staff beginning in Summer 2004, it is not clear why Kapp waited eleven months after his grievance was finally denied to file the instant complaint. Nonetheless, he did so within the applicable limitations period.

3.  **Construction as Official Capacity Claims; Injunctive Relief Available**

The complaint filed herein names Joe Booker, the warden at FMC-Lexington, as the sole defendant in this action but does not indicate whether he is named in his individual capacity or his official capacity. Where a plaintiff does not expressly indicate that a defendant in a Section 1983 action is named in his individual capacity, the court must construe the claim as an official capacity claim. *Hardin v. Straub,* 954 F.2d 1193, 1999 (6th Cir. 1992). Because Kapp sued Mr. Booker for acts undertaken within the scope of his employment, but did not specify that he was being sued in his official capacity, the Court must construe those claims as being claims against him in his official capacity. *Moore v. City of Harriman,* 272 F.3d 769, 72-75 (6th Cir. 2001).

Suing a public official in his or her official capacity for acts performed within the scope of his or her authority is equivalent to suing the government entity itself. *Kentucky v. Graham,* 473 U.S. 159, 166 (1985). When damages are sought against a federal employee in his official capacity, the damages in essence are sought against the United States. *Myers & Myers, Inc. v. United States Postal Serv.,* 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States,* 521 F.2d 872, 874-75

7

(9th Cir. 1975). Because the United States is entitled to sovereign immunity against damages claims, such claims cannot be maintained. *Myers & Myers*, 527 F.2d at 1256. A plaintiff may not avoid the sovereign immunity bar merely by naming an individual federal officer of the United States as a defendant. *Ecclesiastical Order of the Ism of Am v. Chasin*, 845 F.2d 113, 115 (6th Cir. 1988) (citing *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982)). Therefore, Kapp's claim for damages against the defendant must be dismissed. Kapp's complaint sought not only damages, but injunctive relief requiring the defendant to provide him with the medications he desires. The Court will evaluate this demand for injunctive relief on the merits.

4.  **The Merits of Plaintiff's Deliberate Indifference Claim**

So considered, Kapp's demand for injunctive relief cannot go forward. The volume and contents of the documents submitted as exhibits to the complaint do not evidence that the defendant has ignored Kapp's medical condition nor given grossly inadequate care. To the contrary, the record indicates that Kapp has, at most, a disagreement with the course of treatment being provided by the prison medical staff. When a plaintiff claims deliberate indifference to his serious medical needs, but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if the plaintiff can demonstrate that the prison medical providers made mistakes in diagnosis and treatment, mere "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. Where the plaintiff does receive medical treatment but disputes its adequacy, the federal courts do not second-guess the medical judgments of trained professionals to constitutionalize a claim of medical negligence that would otherwise

8

sound merely in state tort law. *Westlake*, 537 F.2d at 860 n.5; *Wilson v. Wilkinson*, 62 Fed. Appx. 590, 591 (6th Cir. 2003) (unpublished disposition); *Wooley v. Campbell*, 63 Fed. Appx. 789 (6th Cir. 2003); *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. 2003).

Here, K.M. White, the Regional Director of the Mid-Atlantic Regional Office, authored the BOP's response and denial of Kapp's BP-10 intermediate appeal. The response detailed the care provided to Kapp after his arrival at FMC-Lexington:

> "Review of your appeal with institution staff indicates your medical condition has been thoroughly assessed and evaluated. Review of your medical record reveals you were admitted to your current facility on July 3, 2004. Since your admission, your primary care provider team has been aggressive in the provision of your care and treatment. You have been examined by a consultant pain management specialist and a contract Neurologist. Both of these specialists have extensive experience in the treatment of RSD. An appropriate dosage of narcotic pain medication was prescribed in addition to other anti-inflammatory medications. You have also been evaluated by a staff psychiatrist and psychologist and have been prescribed two different antidepressant medications. You have been assessed by the Physical Therapy department for rehabilitation of your left shoulder. Nerve conduction velocity and electro-myography studies have been included in your treatment plan. Your medical treatment plan, developed and implemented by your primary care provider team and Clinical Director, has been comprehensive and appropriate. This treatment plan will continue to be expanded and adjusted in response to several disciplines. The pain management specialist will review the overall treatment plan for appropriateness when you are reassessed in the future. Your are encouraged to continue to work with your primary care provider team for other health care related issues and concerns."

The foregoing fails to demonstrate any indifference, let alone "deliberate indifference" to Kapp's medical needs. It shows that Kapp was provided with an abundance of medical care, care that was adjusted over time to conform as best as possible to the treatment regimen prescribed by Kapp's outside doctors with what was acceptable under the BOP's formulary guidelines and reasonable in light of the care that can be provided in a prison setting. The correspondence from outside consulting physicians in Lexington suggest a treatment regimen that, although not identical to that

9

given by FMC-Lexington medical staff, appears fully consistent therewith. The facts here are simply insufficient to support any claim that Defendant was deliberately indifferent under the Eighth Amendment to Kapp's serious medical needs.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)  This action is **DISMISSED**, *sua sponte*, with prejudice.

(2)  The Court certifies that any appeal would not be taken in good faith. 28 U.S.C. §1915(a)(3); *McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997); *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997).

(4)  This is a **FINAL** and **APPEALABLE** order.

This the 16th day of February, 2006.

                                           *Joseph M. Hood*
                                           JOSEPH M. HOOD, CHIEF JUDGE

Date of Entry and Service: